8894

KEENAN v. MATTHEWS.

(82 S. E. 431.)

CONTRACTS. BROKERS AND COMMISSION MERCHANTS. SALES SUBJECT TO COMMISSIONS.

Under a contract providing C. was not to cut or sell any timber for five years without written consent of K., and that when sold or delivered, C. should pay K. a commission of five per cent. on all timber sold, K. held not entitled to commissions on timber sold five years after date of contract.

Before WILSON, J., Lexington, November, 1913. Affirmed.

Action by William J. Keenan against J. L. Matthews, as administrator with will annexed, *de bonis non,* of estate of George C. Clark, deceased, *et al.,* to recover commissions on sales of certain timber, under the following contract:

The State of South Carolina, County of Lexington.

This agreement made and entered into this 22d day of October, in the year of our Lord one thousand nine hundred and two, by and between George C. Clark, of the said county and State, party of the first part, and William J. Keenan, of the city of Columbia, said State, party of the second part: Witnesseth:

Whereas, The said party of the first part did on the 22d day of October, A. D. 1902, purchase from the said party of the second part a tract of land situate in the county of Lexington, said State, described as follows, to wit:

All that certain tract of land in said county and State, containing two thousand and twenty-nine (2,029) acres, known as the Felder or New Mill Tract, bounded on the north by lands now or formerly of Noah Shumpert's estate; northeast by Tom C. Smith; east by Jake Shealy's estate and J. Hallman; south by Cedar Pond Branch; west by lands now or formerly of Day estate and Jake Smith, and northwest by Charlie Bouknight.

And as a part of the consideration for the deed thereof, the party of the second part did take a mortgage for the purchase money.

Now, as a further consideration for the said deed of conveyance, the *parties hereto do hereby covenant and agree:*

That the said George C. Clark, party of the first part, shall send, consign, ship and deliver, free on board at any station or siding on the Southern Railway, subject to the order of the party of the second part, in carload quanti-

ties, all the rosin made or taken from the trees, *upon said land* for a period of five (5) years from the date of these presents. Said rosin to be strained through wire and good cotton batting and to be delivered in good merchantable packages, bound each with four iron hoops and each having a lining hoop; and the said party of the first part is to ship to the said party of the second part, at Columbia, South Carolina, all the spirits of turpentine, made upon the said premises, during said period of five (5) years. Such spirits of turpentine to be delivered at such place in the said city of Columbia as said party of the second part may be prepared to receive and gauge it.

And for the purpose of making effectual this contract for the full period of time it shall run, and to enable the party of the second part to specifically enforce the same against the party of the first part, his heirs, executors, administrators, assigns or successors in interest, the party of the first part hereby grants, sells and conveys to the party of the second part, his heirs and assigns, the turpentine trees on the said tract of land above described. To have and to hold the same until this contract shall be fully performed by the party of the first part, his heirs, executors, administrators, assigns or successors in interest—such interest hereby conveyed to cease and be of no effect upon the full completion and termination of this contract.

The said party of the first part further hereby covenants and agrees that he will send, consign and deliver, free on board cars at any station or siding on the Southern Railway, subject to the order of the party of the second part, in carload quantities, all the rosin made, owned, controlled, distilled for others, or in any way acquired between the date of these presents and the close of the turpentine year and season *of 1904*, upon the following described tract of land, which said tract of land is under lease to said party of the second part—and which said lease the party of the first part for himself, heirs, executors and administrators,

hereby agrees faithfully and fully to perform and carry out:

All that certain tract of land in said county and State, containing six hundred and eighteen (618) acres, lying between Swansea, on the Seaboard Air Line Railway, and Pelion, on the Southern Railway—being the same tract referred to in the lease from Simon P. and M. A. M. Wingard to said George C. Clark.

The said rosin is to be strained through wire and good cotton batting, and to be delivered in good merchantable packages, bound each with four iron hoops, and each having a lining hoop, and the said party of the first part is to ship to the said party of the second part all the spirits of turpentine made, owned, controlled, distilled for others, or in any way acquired between the above named dates. Said spirits of turpentine to be delivered in such place in said city of Columbia as the party of the second part may be prepared to receive and gauge it.

The said party of the second part agrees to allow the said party of the first part Savannah market value, at the time of the shipment, or as soon thereafter as obtainable, for all said rosin, less twelve and one-half (12½) cents per hundred pounds, as freight, and six (6), four (4) and nine (9) cents per package for drayage, storage and inspection, weighing and cooperage charges, and two and one-half (2½) per cent. commissions, or an agreed price per round or tale barrel. In no case is the price for said rosin to exceed the selling price at New York, less twenty-five (25%) per cent. per two hundred and eighty (280) pounds, and the stipulated charges for freight, commissions, etc., and five and one-half (5½) cents per gallon less the Savannah market quotations for all spirits of turpentine shipped to Columbia, South Carolina, less freight to said city of Columbia; said turpentine to be merchantable, white and clear; said price to be in bulk, or without the barrel.

It is further covenanted and agreed between the parties hereto. that for the purpose of and as a means of securing to the said party of the second part the shipment to him of all the above described rosin and spirits of turpentine as stipulated herein, it is hereby agreed that for each and every barrel of rosin and spirits of turpentine made, owned, controlled, distilled for others, or in any way acquired as hereinabove set forth by the said party of the first part and not shipped to the said party of the second part, that the said party of the first part agrees to allow the said party of the second part fifty (50) cents; said forfeit to be as in the nature of liquidated damages, and recoverable on and after the 15th day of January, A. D. 1904.

It is further agreed, that if, at the time of shipment of said rosin, the quotations be nominal, with no demand at such figures or quotations that the said party of the second part be permitted to hold said rosin until such time as a demand in marketable quantities shall occur, and account-sales rendered or proceeds credited in accordance therewith.

That all inspection of said rosin is to be subject to the retest of the Union Naval Stores at Brooklyn, N. Y., or authorized inspectors at point of destination.

The said party of the first part agrees to execute a renewal of this contract annually for four consecutive years, commencing on the termination of this contract, and to be renewed annually thereafter on said date for said term of years.

The said party of the first part further agrees to execute a chattel mortgage on all personal property now owned by him, including distillery, mules, wagons, harness, crude and manufactured rosin and spirits of turpentine and such other personal property as may be purchased by him for the proper conduct of the business to be operated on the said two tracts of land hereinabove described as additional security to the said party of the second part for the payment to him of all indebtedness under the said mortgage given by the said party

of the first part to the said party of the second part on this the 22d day of October, A. D. 1902.

It is further agreed that the said party of the first part shall faithfully and competently conduct the business of boxing, dipping, scraping, hauling, distilling and delivering in merchantable packages, all the available product of all available boxes on said two tracts of land above described, and that the proceeds of said product be placed to the credit of the account of said party of the first part, and only such moneys and supplies be drawn for against said proceeds as may be necessary for the proper and economical conduct of said business.

It is further agreed that the said party of the first part is not to cut, saw, hew or sell any live pine timber now on the said tract first above described for the term of five years from the date of these presents, except with the approval and consent in writing of the said party of the second part, and when sold or delivered, the said party of the first part hereby further agrees to allow the said party of the second part a commision of five (5%) per cent. on all lumber or timber sold from the said tract of two thousand and twenty-nine (2,029) acres of land above described.

To the true performance of all and every of the foregoing covenants and agreements the said parties each to the other do hereby bind themselves, their heirs, executors, administrators and assigns.

In witness whereof, the parties hereto have hereunto set their hand and seals, this 22d day of October, in the year of our Lord one thousand nine hundred and two. George C. Clark (L. S.), William J. Keenan (L. S.). Signed, sealed and delivered in the presence of C. M. Asbill, B. D. Clark.

The facts are stated in the Circuit decree, recited in the opinion.

*Mr. Edward L. Craig,* for appellant, cites: 84 S. C. 153; 65 S. C. 195; 61 So. 644.

*Messrs. E. L. Asbill, C. M. Efird* and *J. B. Wingard,* for respondents, cite: *As to meaning of "when sold:"* 30 Am. & Eng. Enc. of L. (2 ed.) 512; Page Contracts, sec. 1104; 78 S. C. 8.

July 17, 1914.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellant, in his argument, states:

"The principal question at issue in this case and the only question involved in this appeal, is the construction of that portion of a certain contract entered into between William J. Keenan and George C. Clark."

The exceptions allege error on the part of the presiding Judge in concluding that it was necessary for the timber to have been sold within five years from the date of the contract in order for Keenan to be entitled to the five per cent."

Judge Wilson's decree is as follows:

"The issue in controvery arises under the following provision in a bilateral contract executed on the 22d day of October, 1902, by the deceased, George C. Clark, and the plaintiff, William J. Keenan:

'It is further agreed that the said party of the first part is not to cut, saw, hew or sell any live pine timber now on the said tract first above described for the term of five years from the date of these presents, except with the approval and consent in writing of the said party of the second part, and when sold or delivered, the said party of the first part hereby further agrees to allow the said party of the second part a commission of five per cent. on all lumber or timber sold from the said tract of two thousand and twenty-nine acres of land above described.'

"The question was fully argued before me by the attorneys for both sides, the pleadings, the contract and the mortgage executed by the said George C. Clark to the said William J. Keenan, of even date with the said contract in question were submitted to me during the argument."

"My construction of the portion of the contract above quoted is, the party of the first part thereto was not to cut, saw, hew or sell any live pine timber on the tract of land at the time of the execution of the contract for a period of five years from the date of the contract without the approval and consent in writing of the party of the second part, and if the party of the second part consented to said sale, or any timber was sawed, hewed or cut within the five years, by the party of the first part, with the approval and consent in writing of the party of the first (*i. e.,* second?) part, then the party of the first part should allow the party of the second part a commission of five per cent. on all lumber or timber sold or cut from the said tract of land."

"Under the testimony it appears that the timber in question was sold more than ten years after the execution of the contract in question."

"Therefore, my conclusion is that the plaintiff is not entitled to a commission of five per cent. on the amount realized from the sale of the timber in question."

This decree is entirely satisfactory to this Court and is affirmed for the reasons therein stated.